No. 24-3770
_____
_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

OREGON ASSOCIATION OF HOSPITALS AND HEALTH SYSTEMS,

Plaintiff-Appellant,

v.

STATE OF OREGON; OREGON HEALTH AUTHORITY; Doctor SEJAL
HATHI,

Defendants-Appellees.

_____

APPELLEES' BRIEF
_____

Appeal from the United States District Court
for the District of Oregon
_____

DAN RAYFIELD
Attorney General
BENJAMIN GUTMAN
Solicitor General
JORDAN R. SILK
Assistant Attorney General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone:  (503) 378-4402
jordan.r.silk@doj.oregon.gov

Attorneys for Appellees

_____
_____

# TABLE OF CONTENTS

INTRODUCTION ............................................................................1

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF THE ISSUE...........................................................2

STATEMENT OF THE CASE ............................................................2

    A.    The Oregon Legislature enacted HB 2362 to protect
          Oregonians' access to quality, affordable health care. ...................2

    B.    OHA promulgated rules to implement HB 2362's
          substantive and procedural requirements.........................................8

    C.    Plaintiff brought this facial challenge to HB 2362, arguing
          that it was unconstitutionally vague, but the district court
          rejected plaintiff's claim on summary judgment. ..........................10

SUMMARY OF ARGUMENT .........................................................12

ARGUMENT...................................................................................13

    A.    Standard of Review .......................................................................13

    B.    The vagueness doctrine applies a lenient standard to
          economic regulation and does not create any exception to
          the general rule against third-party standing..................................13

    C.    The district court correctly rejected plaintiff's vagueness
          claim. ............................................................................................16

    D.    Plaintiff's arguments fail...............................................................21

CONCLUSION................................................................................25

i

# TABLE OF AUTHORITIES

## Cases Cited

*Bahreman v. Allegiant Air, LLC*,
　122 F.4th 1155 (9th Cir. 2024) ................................................................ 13

*Broadrick v. Oklahoma*,
　413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973) ........................... 14

*Edge v. City of Everett*,
　929 F.3d 657 (9th Cir. 2019) ................................................................... 13

*Grayned v. City of Rockford*,
　408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) .................... 13, 23

*Mistretta v. United States*,
　488 U.S. 361, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989) .................. 14, 22

*Mont. Med. Ass'n v. Knudsen*,
　119 F.4th 618 (9th Cir. 2024) .................................................................. 24

*Moody v. NetChoice, LLC*,
　__ U.S. __, 144 S. Ct. 2383 (2024) ................................................... 21, 24

*Pa. Dep't of Corr. v. Yeskey*,
　524 U.S. 206, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998) ...................... 23

*Pac. Choice Seafood Co. v. Ross*,
　976 F.3d 932 (9th Cir. 2020) ................................................................... 23

*Pest Committee v. Miller*,
　626 F.3d 1097 (9th Cir. 2010) ................................................................. 14

*Sessions v. Dimaya*,
　584 U.S. 148, 138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018) .... 15, 21, 23, 24

*State v. Gaines*,
　206 P.3d 1042 (Or. 2009) ..................................................................... 3, 18

*United States v. Melgar-Diaz*,
　2 F.4th 1263 (9th Cir. 2021) .............................................................. 14, 22

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
　455 U.S. 489, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982) 14, 15, 17, 20, 24

*X Corp. v. Bonta*,
　116 F.4th 888 (9th Cir. 2024) .......................................................... 18, 24

## Constitutional and Statutory Provisions

2021 Or. Laws, ch. 615,
    *codified at* Or. Rev. Stat. §§ 415.500 to 415.900.......................................2

28 U.S.C. § 1367(c)(3)........................................................................11

Or. Rev. Stat. § 183.300.......................................................................8

Or. Rev. Stat. § 183.400......................................................................22

Or. Rev. Stat. § 183.482......................................................................22

Or. Rev. Stat. § 414.018.......................................................................3

Or. Rev. Stat. § 414.570.......................................................................3

Or. Rev. Stat. § 415.500.......................................................................5

Or. Rev. Stat. § 415.500(10)........................................................... 4, 8, 10

Or. Rev. Stat. § 415.500(10)(c) ..........................................................18

Or. Rev. Stat. § 415.500(2).............................................................. 5, 8, 10

Or. Rev. Stat. § 415.500(2)(b) ............................................................18

Or. Rev. Stat. § 415.500(4)(a) .............................................................3

Or. Rev. Stat. § 415.500(4)(a)(B) .................................................... 11, 16

Or. Rev. Stat. § 415.500(4)(a)(F) ........................................................16

Or. Rev. Stat. § 415.500(4)(b) ..............................................................4

Or. Rev. Stat. § 415.500(6)(a) ..............................................................4

Or. Rev. Stat. § 415.500(b)...................................................................5

Or. Rev. Stat. § 415.501(1)...............................................................3, 6

Or. Rev. Stat. § 415.501(11) to (18) .....................................................7

Or. Rev. Stat. § 415.501(11)(a) ............................................................7

Or. Rev. Stat. § 415.501(15)................................................................8

Or. Rev. Stat. § 415.501(18)................................................................8

Or. Rev. Stat. § 415.501(2)..................................................................3

Or. Rev. Stat. § 415.501(3)...............................................................3, 6

Or. Rev. Stat. § 415.501(4)..................................................................6

Or. Rev. Stat. § 415.501(5)..................................................................6

iii

Or. Rev. Stat. § 415.501(6) ....................................................................7

Or. Rev. Stat. § 415.501(7) ....................................................................7

Or. Rev. Stat. § 415.501(8)(a) ...............................................................5

Or. Rev. Stat. § 415.501(8)(c) ..........................................................7, 18

Or. Rev. Stat. § 415.501(9) ........................................................ 6, 7, 19

Or. Rev. Stat. § 442.015 ........................................................................3

Or. Rev. Stat. 414.025 ...........................................................................4

Or. Rev. Stat. 442.386 ...........................................................................6

Or. Rev. Stat. 743B.005 .........................................................................3

US Const, Amend I ..............................................................................14

## Administrative Rules

Or. Admin. R. § 409-070-0005(18) ...................................................8, 19

Or. Admin. R. § 409-070-0005(28) ...................................................8, 19

Or. Admin. R. § 409-070-0010(3) .....................................................9, 19

Or. Admin. R. § 409-070-0042 ....................................................... 10, 20

Or. Admin. R. § 409-070-0045(2) .......................................................10

Or. Admin. R. § 409-070-0055 ............................................................19

Or. Admin. R. § 409-070-060 ..............................................................19

## Other Authorities

Audio Recording,
House Committee on Health Care, HB 2362, Feb 9, 2021 ........................2

Fed. R. Civ. P. 56 ................................................................................13

HB 2362 (2021) ............................ 1, 2, 3, 5, 8, 10, 11, 12, 16, 18, 20, 21, 22, 23

https://www.oregon.gov/oha/HPA/HP/Pages/Guidance-Documents.aspx
(accessed Jan 2, 2025) ...............................................................10

Jack L. Landau,
*Oregon Statutory Construction*, 97 Or. L. Rev. 583 (2019) ...................17

iv

## APPELLEES' BRIEF
_____

## INTRODUCTION

Confronted with rising health care costs and evidence that the merger and consolidation of health care businesses prioritized profits over the cost and quality of care for Oregonians, the Oregon legislature enacted the Health Care Market Oversight Program, HB 2362 (2021). That law empowers the Oregon Health Authority (OHA) to review certain proposed health care business transactions to ensure that the transaction will serve rather than ignore the healthcare needs of Oregonians.

Appellant Oregon Association of Hospitals and Health Systems (OAHHS), a trade organization representing hospitals and health systems likely to be involved in qualifying transactions, brought this lawsuit asserting a nominal "void-for-vagueness" challenge to HB 2362, but arguing in substance that it was an impermissibly broad delegation of policymaking authority to OHA. The district court correctly rejected OAHHS's argument, which rests on a patchwork of flawed analytical premises that unravel under scrutiny. This court should affirm.

## JURISDICTIONAL STATEMENT

Appellees accept plaintiff's jurisdictional statement. Circuit Rule 28-2.2.

## STATEMENT OF THE ISSUE

Did the district court correctly reject plaintiff's constitutional vagueness challenge to HB 2362?

## STATEMENT OF THE CASE

### A. The Oregon Legislature enacted HB 2362 to protect Oregonians' access to quality, affordable health care.

This case arises out of the Oregon Legislature's enactment of HB 2362 in 2021. 2021 Or. Laws, ch. 615, *codified at* Or. Rev. Stat. §§ 415.500 to 415.900. Broadly speaking, HB 2362 gives OHA oversight authority over "material change transactions" involving "health care entities" as specifically defined by statute and OHA rule. The Oregon legislature passed HB 2362 based on rising health care costs for Oregonians and evidence that the merger and consolidation of health care businesses was prioritizing profits over the cost and quality of care for consumers. *See* Audio Recording, House Committee on Health Care, HB 2362, Feb 9, 2021, at 00:12:30 to 00:46:57 (statements of Dr. Martin Gaynor, Carnegie Mellon University, Dr. John McConnell, Center for Health Systems Effectiveness, Oregon Health & Science University, and Bill Kramer, Executive Director for Health Policy, Purchaser Business Group on Health).[1]

---

[1] *Available at*
https://olis.oregonlegislature.gov/liz/mediaplayer/?clientID=4879615486&even
*Footnote continued…*

3

Accordingly, the legislature enacted HB 2362 "to promote the public interest and to advance the goals set forth in Or. Rev. Stat. 414.018," including "improving health, increasing the quality, reliability, availability and continuity of care and reducing the cost of care" for Oregonians, "and the goals * * * described in Or. Rev. Stat. 414.570," including "maintaining regulatory controls necessary to ensure quality and affordable health care for all Oregonians." Or. Rev. Stat. § 415.501(1) (citing Or. Rev. Stat. § 414.018 and Or. Rev. Stat. § 414.570). To that end, HB 2362 requires OHA to promulgate rules creating a process for certain qualifying health care entities to submit notice of qualifying "material change transactions" for OHA's review and approval. Or. Rev. Stat. § 415.501(2) & (3).

More specifically, Or. Rev. Stat. § 415.500(4)(a) defines a "health care entity" as:

(A)    An individual health professional licensed or certified in this state;

(B)    A hospital, as defined in Or. Rev. Stat. 442.015, or hospital system, as defined by [OHA] rule;

(C)    A carrier, as defined in Or. Rev. Stat. 743B.005, that offers a health benefit plan in this state;

_____

*(…continued)*

tID=2021021161 (accessed Jan 21, 2025); *see State v. Gaines*, 206 P.3d 1042, 1050-51 (Or. 2009) (as a matter of state law, legislative history is relevant to the judicial interpretation of Oregon statutes).

(D)    A Medicare Advantage Plan;

(E)    A coordinated care organization or a prepaid managed care health services organization, as both terms are defined in Or. Rev. Stat. 414.025; and

(F)    Any other entity that has as a primary function the provision of health care items or services or that is a parent organization of, or is an entity closely related to, an entity that has as a primary function the provision of health care items or services.

Or. Rev. Stat. § 415.500(4)(b) exempts from that definition certain long-term and residential care facilities.

Or. Rev. Stat. § 415.500(6)(a) defines "material change transaction" as:

(A)    A transaction in which at least one party had average revenue of $25 million or more in the preceding three fiscal years and another party:

    (i)    Had an average revenue of at least $10 million in the preceding three fiscal years; or

    (ii)    In the case of a new entity, is projected to have at least $10 million in revenue in the first full year of operation at normal levels of utilization or operation as prescribed by [OHA] by rule.

(B)    If a transaction involves a health care entity in this state and an out-of-state entity, a transaction that otherwise qualifies as a material change transaction under this paragraph that may result in increases in the price of health care or limit access to health care services in this state.

And Or. Rev. Stat. § 415.500(10) defines "transaction" as:

(a)    A merger of a health care entity with another entity;

(b)    An acquisition of one or more health care entities by another entity;

(c)     New contracts, new clinical affiliations and new contracting affiliations that will eliminate or significantly reduce, as defined by [OHA] by rule, essential services.

(d)     A corporate affiliation involving at least one health care entity; or

(e)     Transactions to form a new partnership, joint venture, accountable care organization, parent organization or management services organization, as prescribed by [OHA] by rule.

"Essential services" include, as pertinent here, "[s]ervices that are essential to achieve health equity." Or. Rev. Stat. § 415.500(2). "'Health equity' has the meaning prescribed by the Oregon Health Policy Board and adopted by [OHA] by rule." Or. Rev. Stat. § 415.500.

Or. Rev. Stat. § 415.500(b) specifically excludes from the definition of material change transaction several types of transactions, including clinical affiliations for the purpose of medical research, transactions that do not affect the control of an entity, and other specific contractual arrangements. Or. Rev. Stat. § 415.501(8)(a) further directs OHA to promulgate by rule "[c]riteria to exempt an entity from" complying with HB 2362 "if there is an emergency situation that threatens immediate care services and the transaction is urgently needed to protect the interests of consumers."

HB 2362 also sets out the procedural framework for OHA's review of material change transactions. Parties to a material change transaction must provide notice to OHA at least 180 days before the expected closing date of the

transaction. Or. Rev. Stat. § 415.501(4). OHA "conduct[s] a preliminary

review to determine if the transaction has the potential to have a negative

impact on access to affordable health care in this state and meets the" criteria

set out in Or. Rev. Stat. § 415.501(9). Or. Rev. Stat. § 415.501(5). Those

criteria are that the transaction poses "no substantial likelihood of

anticompetitive effects" and "will improve health outcomes for residents of this

state" or "will benefit the public good and communities by:"

(i)     Reducing the growth in patient costs in accordance with the health
        care cost growth targets established under Or. Rev. Stat. 442.386 or
        maintain a rate of cost growth that exceeds the target that the entity
        demonstrates is the best interest of the public;

(ii)    Increasing access to services in medically underserved areas; or

(iii)   Rectifying historical and contemporary factors contributing to a lack
        of health equities or access to services[.]"

Or. Rev. Stat. § 415.501(9).

"Following preliminary review," OHA[2] "shall approve a transaction or

approve a transaction with conditions designed to further the goals described in

[Or. Rev. Stat. § 415.501(1)] based on criteria prescribed by [OHA] by rule,

including but not limited to:"

---

[2] If the material change transaction involves the sale, merger, or acquisition of a domestic health insurer, the Oregon Department of Consumer and Business Services participates in the review and makes the final decision. Or. Rev. Stat. § 415.501(3).

7

(a)   If the transaction is in the interest of consumers and is urgently necessary to maintain the solvency of an entity involved in the transaction; or

(b)   If [OHA] determines that the transaction does not have the potential to have a negative impact on access to affordable health care in this state or the transaction is likely to meet the criteria [in Or. Rev. Stat. § 415.501(9)].

Or. Rev. Stat. § 415.501(6).

If a transaction cannot be approved or approved with conditions on preliminary review, OHA proceeds to a "comprehensive review." Or. Rev. Stat. § 415.501(7). OHA may "appoint a review board of stakeholders to conduct a comprehensive review and make recommendations as provided in [Or. Rev. Stat. § 415.501(11) to (18)]." *Id.* That review board "must consist of members of the affected community, consumer advocates, and health care experts," but excludes employees of parties to the transaction or their competitors. Or. Rev. Stat. § 415.501(11)(a). Or. Rev. Stat. § 415.501(8)(c) directs OHA to promulgate by rule "[c]riteria for when to conduct a comprehensive review and appoint a review board under [Or. Rev. Stat. § 415.501(7)], that must include, but is not limited to":

(A)   The potential loss or change in access to essential services;

(B)   The potential to impact a large number of residents in this state; or

(C)   A significant change in the market share of an entity involved in the transaction.

8

After comprehensive review, which may include up to two public hearings, Or. Rev. Stat. § 415.501(15), the review board makes a recommendation whether OHA should approve, deny, or approve with conditions the proposed transaction. Or. Rev. Stat. § 415.501(18). OHA makes the ultimate decision and issues a final order explaining it. *Id.* That final order is subject to judicial review under Oregon's Administrative Procedures Act, Or. Rev. Stat. § 183.300 *et seq.* Or. Rev. Stat. § 415.501(18).

**B.  OHA promulgated rules to implement HB 2362's substantive and procedural requirements.**

Following the legislature's enactment of HB 2362, OHA promulgated administrative rules to implement it. Pursuant to Or. Rev. Stat. § 415.500(2) & (10), Or. Admin. R. § 409-070-0005(18) defines "health equity" as

> a health system having and offering infrastructure, facilities, geographic coverage, affordability and all other relevant features, conditions, and capabilities that will provide all people with the opportunity and reasonable expectation that they can reach their full health potential and well-being and are not disadvantaged by their race, ethnicity, language, disability, age, gender, gender identity, sexual orientation, social class, intersections among these communities or identities, or their socially determined circumstances.

Or. Admin. R. § 409-070-0005(28) defines "services that are essential to achieve health equity as:

(a)     Any service directly related to the treatment of a chronic condition;

(b)     Pregnancy-related services;

(c)    Prevention services including non-clinical services; or

(d)    Health care system navigation and care coordination services.

Or. Admin. R. § 409-070-0010(3) provides that a "significant reduction of services" occurs "when the transaction will result in a change of one-third or more of any of the following:"

(a)    An increase in time or distance for community members to access essential services, particularly for historically or currently underserved populations or community members using public transportation;

(b)    A reduction in the number of providers, including the number of culturally competent providers, health care interpreters, or traditional healthcare workers, or a reduction in the number of clinical experiences or training opportunities for individuals enrolled in a professional clinical education program;

(c)    A reduction in the number of providers serving new patients, providers serving individuals who are uninsured, or providers serving individuals who are underinsured;

(d)    Any restrictions on providers regarding rendering, discussing, or referring for any essential services;

(e)    A decrease in the availability of essential services or the range of available essential services;

(f)    An increase in appointment wait times for essential services;

(g)    An increase in any barriers for community members seeking care, such as new prior authorization processes or required consultations before receiving essential services; or

(h)    A reduction in the availability of any specific type of care such as primary care, behavioral health care, oral health care, specialty care, pregnancy care, inpatient care, outpatient care, or emergent care as relates to the provision of essential services.

*See* Or. Rev. Stat. §§ 415.500(2) & (10) (qualifying transactions include "[n]ew contracts, new clinical affiliations, and new contracting affiliations that will eliminate or significantly reduce, as defined by [OHA] by rule, essential services"; and "essential services" include "[s]ervices that are essential to achieve health equity").

OHA's rules also provide for an optional, free application to OHA for a determination as to whether a transaction is subject to OHA review. Or. Admin. R. § 409-070-0042. And health care entities may request a pre-filing conference with OHA to preview the transaction and notice requirements and discuss OHA's expectations for its review. Or. Admin. R. § 409-070-0045(2). Finally, OHA has issued a number of sub-regulatory guidance documents, which provide detailed information about the law's requirements and are available to the public on OHA's website. (SER-4-72); https://www.oregon.gov/oha/HPA/HP/Pages/Guidance-Documents.aspx (accessed Jan 21, 2025).

## C. Plaintiff brought this facial challenge to HB 2362, arguing that it was unconstitutionally vague, but the district court rejected plaintiff's claim on summary judgment.

Plaintiff, a trade organization whose hospital and health system membership is involved in qualifying material change transactions, brought this complaint, alleging a federal claim that HB 2362 was void for vagueness on its

11

face under the Due Process Clause and a pendant state-law claim that HB 2362 violated the Oregon Constitution's "nondelegation doctrine." (ER-69-74). Plaintiff's vagueness claim alleged that HB 2362 failed to adequately define "health care entity" or "material change transaction," and that HB 2362 failed to provide sufficient criteria to OHA to avoid arbitrary enforcement. (ER-70-71).

The parties filed cross-motions for summary judgment. (C.R. 28, 31). The state argued that that HB 2362 was not unconstitutionally vague as a matter of law, and that the district court should decline to exercise supplemental jurisdiction over plaintiff's state-law nondelegation claim. (C.R. 28); *see* 28 U.S.C. § 1367(c)(3) (district courts may decline supplemental jurisdiction over state claims if they have dismissed all federal claims). And in supplemental briefing requested by the court, the state argued that plaintiff lacked standing to assert third-party rights to support its vagueness claim. (C.R. 42).

The district court granted the state's summary judgment motion and denied plaintiff's. (ER-4-48). Recognizing that HB 2362 does not inhibit or threaten to inhibit the exercise of constitutional rights, the district court first concluded that plaintiff lacked standing to challenge the definition of "health care entity" because plaintiff's membership was indisputably subject to the law. (ER-33-34); *see* Or. Rev. Stat. § 415.500(4)(a)(B) ("health care entity" includes

hospitals and hospital systems).  Further recognizing that "[e]conomic

regulation is subject to a less strict vagueness test," the district court concluded

that HB 2362 and OHA's implementing regulations and guidance documents

provided fair notice of the law's requirements and sufficient standards to avoid

arbitrary enforcement.  (ER-25, ER-34-46).  And having rejected plaintiff's

federal claim as a matter of law, the district court declined to exercise

supplemental jurisdiction over plaintiff's state-law claim.  (ER-46-48).  Plaintiff

now appeals.

## SUMMARY OF ARGUMENT

The district court correctly rejected plaintiff's vagueness claim.  HB 2362

is a broad delegation of authority to OHA, to be sure, but it is a permissible one.

Plaintiff's argument to the contrary rests on a patchwork of flawed analytical

premises that unravels under scrutiny.  The heightened standard of vagueness

plaintiff seeks in recent Supreme Court case law applies only to criminal and

immigration deportation cases.  The recent Court decisions plaintiff cites have

not displaced the Court's longstanding vagueness test for economic regulations,

and with respect to the rules governing facial challenges, HB 2362 occupies a

plainly legitimate sweep.  This court should affirm the district court's judgment.

13

## ARGUMENT

### A.    Standard of Review

Summary judgment is appropriate if the facts are undisputed and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

This court reviews a district court's summary judgment ruling *de novo*.

*Bahreman v. Allegiant Air, LLC*, 122 F.4th 1155, 1158 (9th Cir. 2024).

### B.    The vagueness doctrine applies a lenient standard to economic regulation and does not create any exception to the general rule against third-party standing.

"It is a basic principle of due process that an enactment is void for

vagueness if its prohibitions are not clearly defined."  *Edge v. City of Everett*,

929 F.3d 657, 664 (9th Cir. 2019) (quoting *Grayned v. City of Rockford*, 408

U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)).  Under the void-for-

vagueness doctrine, laws must "give the person of ordinary intelligence a

reasonable opportunity to know what is prohibited, so that he [or she] may act

accordingly."  *Id.*

The federal constitution's vagueness doctrine also requires that the law

provide standards sufficient to avoid "arbitrary and discriminatory

enforcement."  *Id.*  At the same time, however, the federal constitution permits

legislative delegations of policymaking authority to executive agencies as long

as the delegation provides "an intelligible principle to which the [agency] is

directed to conform" that "[makes] clear to the [agency] 'the general policy' [it]

14

must pursue and the 'boundaries of [its] authority'"—a standard that is "not demanding." *United States v. Melgar-Diaz*, 2 F.4th 1263, 1267 (9th Cir. 2021) (quoting *Mistretta v. United States*, 488 U.S. 361, 372, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989)).

And unlike the related "overbreadth" doctrine, the void-for-vagueness doctrine does not create any exception to the general rule against third-party standing. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982); *see Pest Committee v. Miller*, 626 F.3d 1097, 1112 (9th Cir. 2010) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)) (the overbreadth doctrine precludes laws that reach substantially more protected speech than the First Amendment allows "judged in relation to the statute's plainly legitimate sweep")). That is, under the vagueness doctrine (and unlike the overbreadth doctrine, which applies only in the First Amendment context), "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman*, 455 U.S. at 494-95.

The vagueness doctrine calls for a context-specific analysis: "'[t]he degree of vagueness that the Constitution [allows] depends in part on the nature of the enactment.'" *Sessions v. Dimaya*, 584 U.S. 148, 156, 138 S. Ct. 1204,

15

200 L. Ed. 2d 549 (2018) (quoting *Hoffman*, 455 U.S. at 498-99). "[T]he most exacting vagueness standard" applies to criminal penalties, as well as immigration removal cases, given "the grave nature of deportation * * * amounting to lifelong banishment or exile." *Id.* at 156-57 (internal quotation marks omitted).

But "the Court has expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 156 (quotation marks omitted). As the Court explained:

> [E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to administrative process.

*Hoffman*, 455 U.S. at 498-99. For that reason, as a matter of *vagueness* doctrine, courts measure the "degree of vagueness" that the Constitution allows by considering whether the statute (1) involves only economic regulation; (2) contains only civil penalties; (3) includes a scienter requirement; and (4) threatens constitutionally protected rights. *Id.*

Under that standard, the clarity of notice required depends on the sophistication of the parties likely to be subject to the law. *Hoffman*, 455 U.S.

at 501 (for laws regulating economic activity, the question is whether a "business person of ordinary intelligence" would have notice). And administrative rulemaking and subregulatory guidance can also serve to clarify the law's contours and regulate its enforcement. *Id.* at 498, 502.

## C. The district court correctly rejected plaintiff's vagueness claim.

As noted, plaintiff's claim asserted that HB 2362's definitions of "health care entity" and "material change transaction" were unconstitutionally vague—principally because they include residual, open-ended delegations of authority to OHA—and that the statute fails to articulate sufficient standards to avoid arbitrary enforcement. Under the principles discussed above, the district court properly rejected plaintiff's vagueness claim.

First, the district court correctly held that plaintiff lacked standing to challenge the statutory definition of "health care entity"—specifically, the residual portion of that definition reaching "[a]ny other entity that has as a primary function the provision of health care items or services or that is a parent organization of, or is an entity closely related to, an entity that has as a primary function the provision of health care items or services." (ER-33-34); Or. Rev. Stat. § 415.500(4)(a)(F). The statutory definition explicitly applies to hospitals and hospital systems, Or. Rev. Stat. § 415.500(4)(a)(B)—*i.e.*, plaintiff's membership—so under well-settled *vagueness* doctrine plaintiff lacks standing

to assert the rights of third parties subject solely to the residual clause.  *See Hoffman*, 455 U.S. at 494-95 ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

Plaintiff raises no legitimate response to that conclusion of the district court.  (App. Br. at 27-30).  Instead, plaintiff confuses the legal standards applicable to vagueness claims, overbreadth claims, and facial challenges to suggest that, because this is a facial challenge, plaintiff has standing to assert third-party rights even though plaintiff "clearly falls within the statute's ambit." (App. Br. 29).  But plaintiff's claim is one asserting *vagueness*, not overbreadth, and "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman*, 455 U.S. at 494-95.[3]  The rules applicable to facial challenges have nothing to do with that principle of vagueness doctrine.

---

[3] Even if plaintiff had standing to challenge the definition of "health care entity," the challenge would fail.  The statute identifies several clear examples of health care entities and provides an intelligible principle to guide the application of the residual clause.  Plaintiff's extraordinary suggestion that any non-exclusive list in a statute is void for vagueness has no support in the law and is difficult to reconcile with bedrock principles of statutory construction. *See* Jack L. Landau, *Oregon Statutory Construction*, 97 Or. L. Rev. 583, 684 (2019) ("The rule of *ejusdem generis*," "one of the classics of statutory construction," "states that, when a statute provides a list of specific items followed by a general catchall phrase—such as 'and other'—the general

*Footnote continued…*

18

Second, the district court correctly rejected plaintiff's vagueness challenge to the definition of "material change transaction," the grant of authority to OHA to establish criteria for comprehensive review, and plaintiff's arbitrary enforcement argument, all for essentially the same reasons.  As the district court cogently explained, plaintiff's argument seeks to impermissibly advance a meritless *delegation* argument in the guise of a *vagueness* challenge.

Plaintiff's argument focuses on Or. Rev. Stat. § 415.500(10)(c), which defines material change transactions to include "new contracts, new clinical affiliations, and new contracting affiliations that will eliminate or significantly reduce, as defined by [OHA] by rule, essential services."  And Or. Rev. Stat. § 415.500(2)(b) defines "essential services" to include "services that are essential to achieve health equity" as defined by OHA rule.  With respect to comprehensive review, Or. Rev. Stat. § 415.501(8)(c) gives OHA authority to prescribe criteria for comprehensive review but expressly requires those criteria

_____

*(…continued)*

catchall phrase includes only things of the same character or nature as the specific items on the list.").  Plaintiff's histrionic characterization of HB 2362 should not persuade this court to usurp the ordinary means by which Oregon courts identify the intent of Oregon's legislature. *See Gaines*, 206 P.3d at 1050-51 (Oregon courts construe Oregon statutes to identify the legislature's intent, analyzing the text in context and any pertinent legislative history); *cf. X Corp. v. Bonta*, 116 F.4th 888, 898 (9th Cir. 2024) (facial constitutional challenges are disfavored because "courts usually handle constitutional claims case by case, not en masse").

19

to include the potential loss or change in access to essential services, the number of state residents affected, and a significant change in market share of an involved entity.

OHA, in turn, has promulgated rules defining health equity, Or. Admin. R. § 409-070-0005(18); identifying four specific categories of essential services, Or. Admin. R. § 409-070-0005(28); and identifying eight specific ways that a transaction might "significantly reduce" essential services if the transaction will cause adverse changes by a factor of one-third, Or. Admin. R. § 409-070-0010(3). OHA has also promulgated criteria for comprehensive review that largely mirror the criteria expressly set forth in the statute. *Compare* Or. Admin. R. §§ 409-070-0055 and 409-070-060 (OHA rules for preliminary and comprehensive review) *with* Or. Rev. Stat. § 415.501(9) (express statutory criteria for approval of material change transactions following comprehensive review).

Finally, OHA has also published a substantial amount of subregulatory guidance, which is available to the public on OHA's website. (SER-4-72). That guidance includes a short "Frequently Asked Questions" document and a more detailed "Analytic Framework" document that provides an overview of OHA's analytic approach when reviewing transactions, (SER-4-7, 26-53), as well as more specific guidance documents regarding health care entities subject

to review, (SER-70-72); transactions not subject to review, (SER-8-11); when changes in ownership of assets result in changes in control subject to the law, (SER-12-15); what are essential services and what constitutes a significant reduction, (SER-16-25); when OHA will require comprehensive review, (SER-54-57); criteria for community review boards and outside advisors, (SER-58-63, 64-66); and pertinent timelines, (SER-67-69). Finally, OHA has created a process by which a party can obtain a free determination whether a potential transaction comes within the law. Or. Admin. R. § 409-070-0042.

By any measure of vagueness, HB 2362 and OHA's implementing regulations provide fair notice of the law's requirements and set forth more-than sufficient standards to avoid arbitrary enforcement. Contrary to plaintiff's argument, HB 2362 and OHA's implementing regulations articulate the Health Care Market Oversight Program's standards and procedures to a high level of detail, the law does not interfere with constitutionally protected rights, and administrative processes exist to clarify the law's requirements for potentially subject parties. *Hoffman*, 455 U.S. at 498-99. Given the "greater tolerance" that the "less strict vagueness test" has for economic regulation like that at issue here, *id.*, the district court correctly rejected plaintiff's vagueness claim.

21

**D.     Plaintiff's arguments fail.**

Plaintiff's arguments in search of a contrary conclusion rest on a patchwork of flawed analytical premises that confuses the proper legal framework.  At bottom, however, plaintiff argues that HB 2362 is an impermissibly broad delegation of policymaking authority under the "separation of powers prong" of the vagueness analysis and, on that basis, argues that OHA's implementing regulations cannot even be considered.  With those premises in mind, plaintiff seeks support for its vagueness argument in the Court's *Dimaya* opinion—which held an immigration deportation statute unconstitutionally vague, *Dimaya*, 584 U.S. at 156-57, 174-75—and the principle governing *facial challenges* that the challenged law lack a "plainly legitimate sweep," *Moody v. NetChoice, LLC*, __ U.S. __, 144 S. Ct. 2383, 2397 (2024).

Plaintiff's arguments suffer from at least four fatal analytical flaws.  First, plaintiff's argument assumes, but fails to establish, that the separation of powers prong of the federal constitution's vagueness doctrine imposes greater restrictions on legislative delegations of policymaking authority than that same constitution's nondelegation doctrine.  As noted above, the federal constitution ordinarily allows Congress to delegate policymaking authority to executive agencies as long as it gives the agency an "intelligible principle" governing the

"general policy" the agency must pursue—a standard that is "not demanding." *Melgar-Diaz*, 2 F.4th at 1267 (quoting *Mistretta*, 488 U.S. at 372). Although HB 2362 poses a state-law delegation question rather than a federal one, for all the reasons explained above it provides a sufficient "intelligible principle" for OHA to pursue. Plaintiff never explains how to reconcile its view of the separation of powers prong of the federal constitution's vagueness doctrine with that same constitution's permissive nondelegation doctrine.

Second, the answer to that tension does not assist, but further undermines, plaintiff's argument: Namely, the separation of powers prong of the vagueness doctrine is concerned with arbitrary, *ad hoc* enforcement of vague standards, *not* an agency's quasi-legislative authority to fix and codify generally applicable policy. Implementing regulations and published guidance commit the agency to a specific, articulated policy that must be consistently applied and may be tested by the judicial branch. *See* Or. Rev. Stat. §§ 183.400, 183.482 (Oregon's Administrative Procedures Act, which permits judicial review of agency rules and orders to ensure that they are within the agency's constitutional and statutory authority and consistent with prior agency practice). In that way, administrative rules and subregulatory guidance specifically *avoid* the sort of *ad hoc* arbitrary enforcement on which the vagueness analysis's separation-of-powers prong focuses, and statutory

delegations of rulemaking authority are fundamentally different-in-kind from the unbridled discretion of the police officer at issue in vagueness cases. *See Grayned*, 408 U.S. at 108-09 ("[a] vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis").

Put a different way, the fact that HB 2362 delegates policymaking discretion to OHA "does not demonstrate ambiguity. It demonstrates breadth." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998) ("[T]he fact that a statute can be applied in situations not expressly anticipated" by the legislature that enacted it "does not demonstrate ambiguity. It demonstrates breadth."). And "breadth is not the same thing as vagueness." *Pac. Choice Seafood Co. v. Ross*, 976 F.3d 932, 945 (9th Cir. 2020). Plaintiff's policy disagreement about the scope of authority delegated to OHA fails to establish unconstitutional vagueness warranting federal court intervention in Oregon's health care policies.

Fourth, neither the *Dimaya* case nor the principles governing facial challenges show that HB 2362 should be reviewed under any heightened vagueness standard. Plaintiff attempts to connect *Dimaya*'s reversal under a heightened vagueness standard to the principle governing facial challenges that

the law lack a "plainly legitimate sweep," but plaintiff fails to fill the analytical gap between those principles, because no connection exists.

To be sure, *Dimaya* held an immigration deportation statute unconstitutionally vague and, in doing so, it rejected the government's argument that the "more permissive form of the void-for-vagueness doctrine" applicable to economic regulation and civil laws generally under *Hoffman* should apply. *Dimaya*, 584 U.S. at 156-57. But it did not reach that conclusion in reliance on the "plainly legitimate sweep" principle governing facial challenges. It reached that conclusion because "the most exacting *vagueness* standard" applies to criminal and immigration deportation laws. *Id.* This is neither a criminal nor a deportation case so, as a matter of *vagueness* doctrine, *Hoffman* applies.

Moreover, *Dimaya* says *nothing* about the "plainly legitimate sweep" component of the rule governing facial challenges. Facial challenges to laws remain disfavored, so if the "plainly legitimate sweep" standard lowers the bar for facial challenges, it lowers it only slightly. *See X Corp. v. Bonta*, 116 F.4th 888, 898 (9th Cir. 2024) (citing *Moody*, 144 S. Ct. at 2397) (facial challenges are disfavored because "courts usually handle constitutional claims case by case, not en masse"); *see also Mont. Med. Ass'n v. Knudsen*, 119 F.4th 618, 631-36 (9th Cir. 2024) (McKeown, J., concurring) (discussing facial-challenges

standards and noting that "courts must not facially strike down a state law with a 'plainly legitimate sweep'").  Here, the Oregon legislature's enactment—providing OHA oversight authority to ensure that large health care business transactions do not prioritize profits over equitable access to quality, affordable health care for Oregonians—occupies a plainly legitimate sweep.  Plaintiff's contrary argument is meritless.

## CONCLUSION

This court should affirm the district court's judgment.

Respectfully submitted,

DAN RAYFIELD
Attorney General
BENJAMIN GUTMAN
Solicitor General

/s/  Jordan R. Silk

JORDAN R. SILK  #105031
Assistant Attorney General
jordan.r.silk@doj.oregon.gov

Attorneys for Defendants-Appellees
State of Oregon, et al.

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify

that the Appellees' Brief is proportionately spaced, has a typeface of 14 points

or more and contains 5,289 words.

DATED:  January 21, 2025

/s/  Jordan R. Silk
_____
JORDAN R. SILK  #105031
Assistant Attorney General
jordan.r.silk@doj.oregon.gov

Attorneys for Defendants-Appellees
State of Oregon, et al.

DAN RAYFIELD
Attorney General
BENJAMIN GUTMAN
Solicitor General
JORDAN R. SILK
Assistant Attorney General
1162 Court St.
Salem, Oregon 97301
Telephone: (503) 378-4402

Counsel for Appellees

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| OREGON ASSOCIATION OF HOSPITALS AND HEALTH SYSTEMS, | U.S.C.A. No. 24-3770 |
| Plaintiff-Appellant, | |
| v. | STATEMENT OF RELATED CASES |
| STATE OF OREGON; OREGON HEALTH AUTHORITY; Doctor SEJAL HATHI, | |
| Defendants-Appellees. | |

Pursuant to Rule 28-2.6, Circuit Rules of the United States Court of

Appeals for the Ninth Circuit, the undersigned, counsel of record for Appellees,

///

///

///

///

///

///

certifies that she has no knowledge of any related cases pending in this court.

Respectfully submitted,

DAN RAYFIELD
Attorney General
BENJAMIN GUTMAN
Solicitor General

/s/  Jordan R. Silk

JORDAN R. SILK  #105031
Assistant Attorney General
jordan.r.silk@doj.oregon.gov

Attorneys for Defendants-Appellees
State of Oregon, et al.

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2025, I directed the Appellees' Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/  Jordan R. Silk

JORDAN R. SILK  #105031
Assistant Attorney General
jordan.r.silk@doj.oregon.gov

Attorney for Defendants-Appellees
State of Oregon, et al.

JRS:bes/981486061